WILLIAM H. NICE *et al.* Defendants in Error, *vs.* STEPHEN
S. NICE *et al.*—(ALICE BAILEY *et al.* Plaintiffs in Error.)

*Opinion filed October 24, 1916—Rehearing denied Dec. 8, 1916.*

WILLS—*a step-child is not within contemplation of section 11
of Statute of Descent.* A step-child of the testator is not within
the contemplation of section 11 of the Statute of Descent, which
prevents the lapse of a devise or bequest to a child or grandchild
in case such child or grandchild pre-deceases the testator leaving
issue, even though the clause devising the remainder in fee names
such step-child with the testator's children and concludes with the
words, "making them all my equal heirs."

WRIT OF ERROR to the Circuit Court of DeWitt county;
the Hon. GEORGE A. SENTEL, Judge, presiding.

HERRICK & HERRICK, (WIRT HERRICK, guardian *ad
litem,*) for plaintiffs in error.

THOMAS L. JARRETT, for defendants in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the
court:

The defendants in error filed their bill for partition in
the circuit court of DeWitt county to the May term, 1915,
of said court, claiming to be the owners, together with certain of the defendants to the bill, of certain real estate in
DeWitt and Macon counties as children and devisees under
the last will and testament of Erastus Nice, deceased, and
as grantees of certain of said children and devisees.

It appears from the pleadings and proofs that Erastus
Nice, the former owner of the lands in controversy, made
his will disposing of said lands January 12, 1888. The will
consists of two paragraphs. By the first paragraph the testator provided that his just debts be fully paid. The second paragraph is as follows:

"*Second*—I give and bequeath to my wife, Mary Elizabeth Nice, all my personal property of every character; also

all my real estate during her lifetime, and at her death said property which remains shall be divided equally between Mary Emiline Stephanson, (afterward Mary Emiline Bailey, being daughter of my wife, Mary E. Nice,) and William H. Nice, Stephen S. Nice, Mary L. Nice, (now Mary L. McDonald,) Elizabeth A. Nice, (now Elizabeth A. Stephanson,) Harvey D. Nice, Ella A. Nice and Thomas M. Nice, making them all my equal heirs. Lastly, I hereby nominate and appoint William Parker, of Macon county, Illinois, my executor of this my last will."

Mary Emiline Bailey, mentioned in this paragraph, a step-daughter of the testator, died in April, 1903, leaving a husband and several children, among them Alice Bailey and Emma Bailey, the plaintiffs in error, who at the time of the suit were infants and were represented by a guardian *ad litem*. Mary Elizabeth Nice, the widow of the testator, died March 13, 1915.

It was alleged in the original bill of complaint that the children of Mary Emiline Bailey took the share of their mother, but an amended bill was filed later in which it was alleged that only the children of the testator named in the second clause of the will and the grantees of certain of them, and the children of a deceased daughter of the testator, had any interest in the property. The defendants to the amended bill answered and complainants replied thereto, and the cause was referred to a special master in chancery to take and report the evidence, with his conclusions. The master found and reported, among other things, that the devisee Mary Emiline Bailey died prior to the said Erastus Nice, and, being his step-daughter, took no interest in said real estate, and that the interest given her lapsed at her death. He recommended partition according to the prayer of the bill among the children of the testator who were named as devisees in the will and the children of a daughter of the testator who had pre-deceased him, and taking into account certain conveyances that had been made by the

devisees. Plaintiffs in error filed objections and exceptions to the master's report, but on a hearing by the court the same were overruled and a decree was entered approving and confirming the master's report and decreeing partition accordingly.

The sole question presented by the assignments of error is whether plaintiffs in error, as children of Mary Emiline Bailey, under the terms of the will have the same rights in the estate as they would have if their mother had been a child of the testator. Plaintiffs in error contend that their mother took the same share as a child of the testator under the will, and that they are entitled to the portion devised to their mother under section 11 of the Statute of Descent, which provides that whenever a devisee or legatee in any last will or testament, being a child or grandchild of the testator, shall die before such testator and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee shall take the estate devised or bequeathed as the devisee or legatee would have done had he survived the testator, and if there be no such issue at the time of the death of such testator, the estate disposed of by such devisee or legatee shall be considered and treated in all respects as intestate estate. This section of the statute applies only when those named as devisees or legatees in the will are children or grandchildren of the testator, and whether the contention of plaintiffs in error is sound or not depends upon whether the language of the will is susceptible of such a construction that there would be conferred upon the step-daughter of the testator the status of a child of the testator and all the rights given by law to such child.

The paramount rule to be observed in construing wills is to ascertain the intent of the testator as expressed by the language of the will, and it is our duty to give full effect to such intent, unless to do so results in the violation of some rule of law or sound public policy. It is also necessary to consider and give full effect, if possible, to all the language

of the will.  There can be no question but that the testator
intended that Mary Emiline Bailey should take the same
rights in his estate, in all respects, as if she had been one
of his own children and heirs-at-law, if she survived the
testator and were living when the will spoke.  It appears
from the evidence that at the time the testator married her
mother Mary Emiline was about twelve years old; that she
lived with the testator and her mother as one of the family
and helped in the household work and in caring for the
other children who were born to the testator; that the tes-
tator was fond of her, introduced her as his daughter and
treated her in all respects as one of his own children; that
after she married and removed to another State they visited
each other at intervals, and after her death he stated that
his property would have to go through court because she
had left minor children.  There is also some slight evidence
that at the time the testator married, the mother of Mary
Emiline had some money, which was put into the common
fund and used by the testator in the accumulation of the
property which he left. .There is, however, no such latent
ambiguity in the terms of the will that it is necessary to
take into consideration the circumstances surrounding the
testator and the making of the will to explain its terms.
The will must be construed according to the intent of the
testator as expressed therein,—not from the intent which
the testator may have had in his mind and which he failed
to express.  If the mother of plaintiffs in error had merely
been mentioned by name as devisee together with the chil-
dren of the testator, and the will had stopped with that,
there can be no doubt that the devise to her would have
lapsed by reason of her dying before the testator.  The fact
that she was a step-child would not prevent such lapse, as
the devise to her would be no different from that of a de-
vise to any.other person not a child or grandchild of the
testator.  The only question is, do the words "making them
all my equal heirs," in the latter part of the second clause

of the will, change the effect of the will? Ordinarily these words would be taken as merely indicating that an equal division or disposition should be made among those the testator had previously named. It is contended, however, by counsel for the plaintiffs in error that the word "heirs," as used by the testator, is equivalent to the word "children," and that to properly construe the will the word "children" should be substituted for the word "heirs." There is reason for such contention, as the word "them," in the expression "making them all my equal heirs," refers, of course, to Mary Emiline Bailey and the children of the testator whom he had previously named, and can refer to no other. But even if the word "children" is substituted for the word "heirs," can the clause be construed so as to confer an interest on anyone but Mary Emiline Bailey and the children of the testator, and Mary Emiline Bailey be given the same status as a child of the testator and all the rights of such child, without substituting therein words not used by the testator, and also giving such words a meaning which it can not be said, from all the language in the will, the testator intended? If the testator had provided, in unequivocal language, that Mary Emiline Bailey should take as one of his own children would take in all respects under the laws of Illinois there would be more merit in the contention. But the testator has not said so, and while it is very clear from the language used in the will that the testator intended that Mary Emiline Bailey, the mother of the plaintiffs in error, should share equally with his children in the disposition of his estate, we are unable to say from the language used that the testator intended that she should have the status and all the rights of a child. The devise was to her, only, and she having died before the testator, and not being a child or grandchild of the testator and not having the status of a child or grandchild under the language of the will, the devise to her necessarily lapsed.

The decree of the circuit court will be affirmed.

*Decree affirmed.*